# UNITED STATES DISTRICT COURT
# DISTRICT OF ALASKA

| | |
|---|---|
| Suzanne M. Bedwell, | ) |
|     Plaintiff, | ) 3:16-cv-00217 JWS |
|     vs. | ) ORDER AND OPINION |
| Braztech International, LC, | ) [Re: Motions at Dockets 19 and 32] |
|     Defendant. | ) |

## I. MOTIONS PRESENTED

At docket 19 defendant Braztech International, LC ("Braztech") moves pursuant to the "first-to-file" rule for an order dismissing, staying, or transferring this action. Braztech supports the motion with a memorandum at docket 20 and a declaration of counsel at docket 21. Plaintiff Suzanne M. Bedwell ("Bedwell") opposes the motion at docket 23. Braztech replies at docket 27.

At docket 32 Bedwell moves pursuant to Rule 15(a)(2) for leave to file a second amended complaint. She supports her motion with, among other things, the affidavit of Ernest D. Bedwell.[1] Bedwell's proposed Second Amended Class Action Complaint

---

[1] Doc. 32-5.

("SACAC") is at docket 32-1. Braztech opposes Bedwell's motion at docket 38. Bedwell replies at docket 39.

At docket 37 the court granted the parties' joint motion[2] to vacate the oral argument that was scheduled for March 24, 2017, on Braztech's motion. Neither party requested that oral argument be rescheduled, and the court finds that oral argument would not further assist the court.

## II. BACKGROUND

According to the complaint, Braztech, a Florida company, is the exclusive importer and wholesaler of "Rossi brand .357 Magnum revolvers" in the United States.[3] The revolvers come in four models: R46202, R46102, R97206, and R97104.[4] Bedwell owns the R46202 model. In 2015 she accidentally dropped it as she was exiting her vehicle, causing the gun to discharge a round of ammunition that struck her minor son, R.Z.B., in the leg. In this putative nationwide class action Bedwell alleges that Rossi .357 Magnums are unreasonably dangerous and defective because they are prone to accidental discharge when dropped.

Bedwell commenced this class action on September 16, 2016.[5] Although the caption of her complaint states that she is proceeding "as mother and next friend of R.Z.B.," Bedwell is not actually suing on behalf of her minor son under Rule 17(c). Instead, she is proceeding strictly on her own behalf as the owner of an allegedly defective Rossi .357 Magnum.[6] Bedwell's First Amended Class Action Complaint states claims for (1) breach of warranty; (2) negligent failure to warn; (3) negligent

---

[2]Doc. 36.

[3]Doc. 10 at 3 ¶ 7.

[4]*Id.* at 5 ¶ 19.

[5]Doc. 1.

[6]Doc. 10 at 1 ("Plaintiff, by and through counsel, and on behalf of herself and all others similarly situated, by their undersigned attorneys, allege as follows . . . ."); *id.* at 3 ¶ 6.

-2-

failure to test; (4) strict liability; and (5) violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). The putative class is defined as "All individuals in the United States and its territories who own a Rossi brand .357 Magnum revolver."[7]

Bedwell's complaint expressly disclaims any personal injury claims or damages.[8] On the same day that Bedwell filed this action, Bedwell's husband Ernest D. Bedwell ("Mr. Bedwell") filed a complaint in the Alaska Superior Court against Braztech and the company that sold Bedwell the Rossi .357 Magnum, Three Bears Alaska, Inc. ("Three Bears"): *Bedwell v. Braztech, et al.*, No. 3AN-16-08939 CI (Alaska Sup. Ct.) ("the Alaska Action.").[9] Mr. Bedwell's complaint seeks damages for personal injuries that R.Z.B. suffered and emotional distress that Mr. Bedwell suffered as a result of the accident. Braztech and Three Bears have counter-sued Bedwell for apportionment of fault.[10] The Alaska Action is currently pending.

Approximately four months before Bedwell filed her putative class action, two Alabama residents, William and Oma Louise Burrow, filed a nationwide class action in the United States District Court for the Southern District of Florida ("the Florida Action") against Braztech and Forjas Taurus, S.A., the Brazilian company that manufactures Rossi .357 Magnum revolvers and Rossi .38 Special revolvers.[11] Mr. and Mrs. Burrow allege that they own a Rossi .38 Special revolver, and Mrs. Burrows was injured when she dropped it, causing it to accidentally discharge a round of ammunition that struck

---

[7]*Id.* at 8 ¶ 29.

[8]*Id.* at 4 n.1 ("The claims asserted in this class action are on behalf of Plaintiff Suzanne Bedwell only as the owner of a defective Rossi brand .357 Magnum and does not assert or seek personal injury claims or damages.").

[9]Doc. 23-2 at 1–3.

[10]Doc. 23-3; doc. 23-4.

[11]Doc. 21-1; doc. 21-2.

her in the leg.[12] The Burrows allege that both types of Rossi revolvers are unreasonably dangerous and defective because they are prone to accidental discharge when dropped.[13] The Burrows' complaint states claims for (1) violation of the FDUTPA; (2) negligence (including failure to test); (3) strict liability; (4) breach of express warranty; (5) breach of implied warranty of merchantability; (6) violation of the Magnuson-Moss Warranty Act; (7) negligent failure to disclose, failure to warn, concealment, and misrepresentation; (8) fraudulent concealment and intentional failure to warn; and (9) declaratory relief. The putative class is defined as "All individuals in the United States who own a Revolver," which includes several models of Rossi .38 Special revolvers and all four models of Rossi .357 Magnum revolvers that are at issue in Bedwell's complaint.[14]

In light of the Florida Action, Braztech moves for an order dismissing, staying, or transferring this action pursuant to the first-to-file rule. After briefing on Braztech's motion was complete, Bedwell filed her pending motion for leave to amend her complaint to add her husband as a plaintiff and the same two state law claims that he is currently litigating in the Alaska Action (with Mrs. Bedwell also added to those claims). Mr. Bedwell states in his affidavit that if the court grants Bedwell's motion then he will file for voluntary dismissal of the Alaska Action.[15]

### III. STANDARDS OF REVIEW

The first-to-file rule is "a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving

---

[12]*Id.* at 15 ¶ 45.

[13]*Id.* at 3 ¶ 6.

[14]*Id.* at 9 ¶ 27.

[15]Doc. 32-5 at 2.

-4-

the same parties and issues has already been filed in another district."[16]  "The decision and the discretion [to apply the first-to-file rule] belong to the district court."[17]  Under most circumstances, considerations of "'economy, consistency, and comity'"[18] dictate that "the court which first acquired jurisdiction should try the lawsuit and no purpose would be served by proceeding with a second action."[19]  But "[t]he 'first-to-file' rule is not a rigid or inflexible rule to be mechanically applied;" it is discretionary and "is to be applied with a view to the dictates of sound judicial administration."[20]  At the same time, because the first-to-file rule is well-designed to promote judicial efficiency, it "should not be disregarded lightly."[21]  "When found to be applicable, the rule gives courts the power to transfer, stay, or dismiss the case."[22]

Bedwell's motion is governed by Rule 15(a).  Rule 15(a) states that after the time to amend pleadings as a matter of course has expired, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Although "the grant or denial of an opportunity to amend is within the discretion of the District Court,"[23] the

---

[16]*Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th Cir. 1982).

[17]*Alltrade, Inc. v. Uniweld Prod., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991).

[18]*Kohn Law Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015) (quoting *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 604 (5th Cir. 1999)).

[19]*Pacesetter*, 678 F.2d at 95.

[20]*Id.*

[21]*Church of Scientology v. United States Dep't of the Army*, 611 F.2d 738, 750 (9th Cir. 1979).

[22]*Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d 1289, 1293 (N.D. Cal. 2013).

[23]*Foman v. Davis*, 371 U.S. 178, 182 (1962).

"court should freely give leave when justice so requires."[24] "Rule 15's policy of favoring amendments to pleadings should be applied with 'extreme liberality.'"[25]

### IV. DISCUSSION

**A.     Bedwell's Motion for Leave to Amend**

Courts consider the four "*Foman* factors" when determining whether to grant leave to amend: "(1) bad faith on the part of the movant; (2) undue delay; (3) prejudice to the opposing party; and (4) futility of the proposed amendment."[26] Prejudice to the opposing party is the factor that "carries the greatest weight."[27] "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend."[28] "The party opposing the amendment bears the burden of showing why the amendment should not be granted."[29]

Braztech raises a number of arguments in opposition to Bedwell's motion to amend. None are persuasive. Braztech concludes that the proposed amendment is a "belated attempt to avoid the first-to-file rule" that "is not made in good faith,"[30] but does not make a strong showing that the amendment would unduly delay the litigation or that Bedwell was motivated by bad faith. Braztech also argues that the amendment is futile because, even with the amendment, Bedwell's complaint is subject to the first-to-file rule. Bedwell's proposed amendment is not futile. "An amendment is futile when 'no

---

[24]Fed. R. Civ. P. 15(a)(2).

[25]*United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981) (quoting *Rosenberg Bros. & Co. v. Arnold*, 283 F.2d 406, 406 (9th Cir. 1960)).

[26]*Naranjo v. Bank of Am. Nat'l Ass'n*, No. 14-CV-02748-LHK, 2015 WL 913031, at *3 (N.D. Cal. Feb. 27, 2015) (citing *Foman*, 371 U.S. at 182).

[27]*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

[28]*Id.* (emphasis in original).

[29]*ABM Indus., Inc. v. Zurich Am. Ins. Co.*, 237 F.R.D. 225, 227 (N.D. Cal. 2006).

[30]Doc. 38 at 12.

set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.'"[31]  Braztech does not contend that Bedwell's claims are invalid; it merely contends that they are subject to dismissal, transfer, or stay under the first-to-file rule.

Finally, Braztech argues that it will be prejudiced because it "would be required to defend substantially similar proposed class claims in two different forums" if the amendment is allowed and the first-to-file rule is not applied.[32]  Braztech's feared prejudice will come to fruition only if the court declines to apply the first-to-file rule.  As discussed below, Braztech's fears are unwarranted.  Bedwell's motion for leave to amend will be granted.

## B. The First-to-File Rule

When deciding whether to apply the first-to-file rule, "a court analyzes three factors: chronology of the lawsuits, similarity of the parties, and similarity of the issues."[33]  Bedwell does not dispute that the first two factors are satisfied because the Florida Action was filed first and the parties in the two cases are substantially similar.[34]  Instead, she argues that the third factor is not satisfied.

---

[31]*Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) (quoting *Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)).

[32]*Id.*

[33]*Kohn Law Grp.*, 787 F.3d at 1240.

[34]"[T]he first-to-file rule does not require strict identity of the parties, but rather substantial similarity." *Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1147 (E.D. Cal. 2010).  Although Mr. and Mrs. Bedwell are not named parties in the Florida Action, Mrs. Bedwell is a member of the putative class in that case.  This is sufficient.  *See Hilton v. Apple Inc.*, No. C-13-2167, 2013 WL 5487317, at *7 (N.D. Cal. Oct. 1, 2013) ("Comparing the class Plaintiff seeks to represent in this action with the proposed class in *Missaghi*, it is evident that an identity of parties exists."); *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 790–91 (6th Cir. 2016) ("[F]or purposes of identity of the parties when applying the first-to-file rule, courts have looked at whether there is substantial overlap with the putative class even though the class has not yet been certified.").

The third factor is satisfied if the issues in both cases are merely "substantially similar;" they need not be identical.[35] "To determine whether two suits involve substantially similar issues, [courts] look at whether there is 'substantial overlap' between the two suits."[36] Courts have found substantial overlap even where one suit involved additional substantive claims[37] or claims arising under different states' laws.[38] What matters is whether the central issue or issues of both cases are identical, and thus application of the rule satisfies the rule's objectives of economy, consistency, and comity.[39]

---

[35] *Kohn Law Grp.*, 787 F.3d at 1240–41.

[36] *Id.* at 1241.

[37] *See, e.g., Youngevity Int'l, Inc. v. Renew Life Formulas, Inc.*, 42 F. Supp. 3d 1377, 1383 (S.D. Cal. 2014) ("Any derivative claims alleged in connection with this trademark dispute do not detract from the core allegations in both actions."); *Schwartz v. Frito-Lay N. Am.*, No. C-12-02740 EDL, 2012 WL 8147135, at *3 (N.D. Cal. Sept. 12, 2012) ("Plaintiff's complaint has a few additional claims (negligent misrepresentation in addition to intentional misrepresentation, fraudulent concealment, and breach of implied warranty of fitness/purpose), but these claims are closely related to the main claims in both cases."); *eNom, Inc. v. Philbrick*, No. C08-1288RSL, 2008 WL 4933976, at *2 (W.D. Wash. Nov. 17, 2008) ("Despite the additional claim in this case, the factual and legal issues in the two cases are overwhelmingly similar. . . . An adjudication of the parties' rights in one case would necessarily affect their rights in the other case. Moreover, substantially the same evidence will be presented in both actions.").

[38] *See, e.g., Wallerstein*, 967 F. Supp. 2d at 1297 (rejecting argument that issues were not substantially similar because one case involved claims under New York, California, and other state laws whereas the other case involved only claims under California law); *Worthington v. Bayer Healthcare, LLC*, No. CIV.A. 11–2793 ES, 2012 WL 1079716, at *6 (D.N.J. Mar. 30, 2012) ("Finding an insubstantial overlap because of the fact that the claims are asserted under different state laws would defeat the judicial efficiency rationale undergirding the first-filed rule.").

[39] *See Wallerstein*, 967 F. Supp. 2d at 1297 ("The Court agrees with Dole that *the thrust of the lawsuits* is identical.") (emphasis added); *Hill v. Robert's Am. Gourmet Food, LLC*, No. 13-CV-00696-YGR, 2013 WL 3476801, at *5 (N.D. Cal. July 10, 2013) ("Here, *the central question* in both cases is the same: whether the use of the 'all natural' label on Pirate Brands products is deceptive and misleading because the products are, in fact, unnatural.") (emphasis added); *Herer v. Ah Ha Pub., LLC*, 927 F. Supp. 2d 1080, 1090 (D. Or. 2013) ("A comparison of the complaints filed demonstrates that *the central issue* in each suit is the scope of Ah Ha's authorization to reproduce and distribute the Work.") (emphasis added).

Bedwell argues that this case and the Florida Action are not substantially similar for two reasons. First, she argues that the named plaintiffs in the Florida Action lack standing to represent .357 Magnum owners because they were injured by a .38 Special, not a .357 Magnum.[40] Bedwell asserts that .38 Specials and .357 Magnums have different safety components and therefore the two guns may be defective in different ways. As Braztech points out, however, this argument misses the mark because it does not relate to any of the first-to-file-rule factors, but rather the merits of class certification in the Florida Action.[41] Bedwell cannot dispute that the putative class in the Florida Action currently includes all .357 Magnum owners, such as herself. Because the court's task at this stage of the case is not to reach the merits of class certification, Bedwell's standing arguments (which are essentially typicality arguments against class certification) are misplaced.

Second, Bedwell argues that the SACAC makes the issues raised in the two cases substantially dissimilar. The court disagrees. Although Bedwell's SACAC adds a new plaintiff (whose claims are shared with a plaintiff in both cases) and two new categories of damages that flow from the central defect alleged, the core issue remains the same: whether Rossi .357 Magnum revolvers are defective because they are prone to accidental discharge when dropped. That issue is identical to an issue raised in the Florida Action. Declining to apply the first-to-file rule would risk conflicting determinations of the parties' legal rights. And simultaneous adjudication of both cases would lead to duplicative discovery and argument regarding whether the .357 Magnum revolvers are defective, wasting judicial and litigant resources. These are precisely the

---

[40]Doc. 23 at 8, 14.

[41]*See Baatz*, 814 F.3d at 792 (holding that argument going to unique nature of damages was not a first-to-file argument, but rather one properly addressed by the court in the first-filed class action "when it determines whether the commonality and typicality requirements for class certification are met.") (citing Fed. R. Civ. P. 23(a)(2)–(3)).

undesirable results that the first-to-file rule is designed to prevent. The court finds that there is substantial overlap between the two suits. Braztech's motion will be granted.

## C. This Case Will Be Transferred to the Southern District of Florida

The Court finds that a transfer of this case to the Southern District of Florida will best serve the purpose of the first-to-file rule in promoting judicial efficiency and avoiding the possibility of conflicting judgments.[42] Once the two cases are before the same court, they might be joined for certain purposes or consolidated under Rule 42(a). Although Braztech argues that dismissal is more appropriate than transfer, the premise of this argument is that the Florida Action could provide full and adequate relief to Bedwell.[43] That is no longer the case in light of the new claims added by Bedwell's SACAC.

## V. CONCLUSION

For the reasons set forth above, the motion at docket 19 is GRANTED and the motion at docket 32 is GRANTED. Plaintiffs shall file the Second Amended Class Action Complaint within 7 days. Within 10 days Ernest D. Bedwell shall move for voluntary dismissal of the action he filed in the Alaska Superior Court. Fourteen days after the date of this order the Clerk will transfer this case to the Southern District of Florida.

DATED this 6th day of June 2017.

/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT

---

[42]*See id.* (noting that the court in the first-filed class action could "tailor its proceedings to address" concerns regarding whether the commonality and typicality requirements were met, "for example by certifying subclasses or bifurcating the proceedings to allow class litigation as to liability while leaving damages for individual determinations."); *Hilton*, 2013 WL 5487317 at *10 ("A transfer appears to be the most convenient remedy for all involved—the cases would [be] before a single judge who could coordinate if not consolidate the proceedings. Plaintiff here would have her claims considered, and Apple would not have to simultaneously or consecutively deal with essentially similar claims.").

[43]Doc. 27 at 18.